**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Horlisa WEAVER, Defendant–Appellee.**

No. 96–5849.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 12, 1997.

Decided Sept. 22, 1997.

Thomas L. Parker, Asst. U.S. Attorney (briefed), Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellant.

Doris A. Randle–Holt (briefed), Office of the Federal Public Defender for the Western Dist. of Tennessee, Memphis, TN, for Defendant–Appellee.

Before: SUHRHEINRICH and MOORE, Circuit Judges; BELL, District Judge.*

## OPINION

MOORE, Circuit Judge.

Horlisa Weaver, a former letter carrier for the United States Postal Service, pleaded guilty to conspiring to commit mail theft and credit card fraud and to stealing mail containing credit cards from her postal route in violation of 18 U.S.C. §§ 371, 1709. At sentencing, the district court departed downward from the range imposed by the Sentencing Guidelines solely to account for the Guidelines' disproportionately harsh treatment of relatively minor white-collar offenders, such as Weaver, as compared with more serious white-collar offenders. We conclude, however, that the departure was not legally justified, and we therefore vacate her sentence and remand for resentencing.

## I

In May 1994, the United States Postal Inspection Service received numerous complaints of non-receipt of first class mail con-

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

taining credit cards from within the 38112 zip code delivery area in Memphis, Tennessee. Postal records indicated that at the time of the losses Horlisa Weaver served as the letter carrier for the affected delivery routes.

On May 26, 1994, postal inspectors observed Weaver set aside four letters that contained credit cards, including two that had been prepared by the inspectors, and place the bundle in a tray of mail for delivery on her route. Outside the post office, the postal inspectors intercepted Weaver, questioned her, and recovered the bundled letters from her delivery tray. Weaver admitted that for three months she had been taking first class mail containing credit cards from her postal route, approximately seventeen envelopes in all. She had used some of the credit cards herself, had destroyed others, and had given some to associates.

Weaver was indicted for seven counts of, inter alia, conspiring to possess stolen mail and to traffic in unauthorized access devices in violation of 18 U.S.C. § 371; theft of mail in violation of 18 U.S.C. § 1709; and credit card fraud in violation of 18 U.S.C. § 1029(a)(2). J.A. at 10–18 (Indictment). She pleaded guilty to Counts One and Two involving conspiracy and theft of mail.

Weaver's presentence investigation report ("PSR") indicated an amount of loss for sentencing purposes of $13,522.64, which, pursuant to U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2F1.1 (1995), increased by three levels her starting offense level of six. J.A. at 74 (PSR at 9). She received further increases for more than minimal planning under U.S.S.G. § 2F1.1(b)(2), and abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. J.A. at 75 (PSR at 10). The PSR recommended that Weaver not receive a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 because she had committed a misdemeanor shoplifting offense after being confronted with the underlying theft of mail. J.A. at 75 (PSR at 10). Weaver's adjusted offense level was calculated at thirteen, resulting in a guideline sentencing range of twelve to eighteen months. Weaver's only objection to the PSR concerned acceptance of responsibility. J.A. at 26–28.

The district court held Weaver's sentencing hearing on May 8, 1996, and concluded that Weaver was not eligible for an acceptance of responsibility adjustment because her subsequent shoplifting offense was sufficiently related in kind to theft of mail charges and thus she had not withdrawn from criminal conduct. J.A. at 46–47 (Sent. Tr. at 10–11); *see* U.S.S.G. § 3E1.1, commentary, applic. note 1(b).

The district court then sua sponte voiced concern with the Guidelines' treatment of Weaver, a relatively minor white-collar offender, as compared with a more egregious bank fraud offender. J.A. at 48 (Sent. Tr. at 12). Weaver's counsel interjected that, at a recent judge's conference, a judge of the U.S. Court of Appeals for the Sixth Circuit expressed a belief that district judges should depart downward more often. J.A. at 49 (Sent. Tr. at 13). This prompted the district court to depart downward on disproportionality grounds, explaining:

> [T]he guidelines are disproportionate when you look at the guidelines in terms of bank fraud and theft from the mails and the use of a credit card, and that where one person who can defraud a bank out of three hundred and sixty plus thousand dollars can get a guideline sentence of thirty months and then a person on the theft from the mails and the use of a credit card of eleven thousand dollars and you can come up with the guidelines of twelve to eighteen months, something is wrong with that.

J.A. at 50–51 (Sent. Tr. at 14–15). In the district court's opinion, the Sentencing Commission had not considered this type of disparity in formulating the guidelines. J.A. at 54 (Sent. Tr. at 18). The district court sentenced Weaver to ten months of incarceration, recommending that five months be served at a halfway house and the remainder in home detention. The government brings the instant appeal pursuant to 18 U.S.C. § 3742(b).

## II

The district court sua sponte[1] departed downward in this case to account for the

---

1. The government correctly notes that the district

court's sua sponte departure from the guidelines

Sentencing Guidelines' disproportionate treatment of a defendant, such as Weaver, who committed credit card fraud in excess of $10,000 as compared with a defendant who committed bank fraud in excess of $300,000. The court concluded that the harsh treatment of relatively minor white-collar offenders had been inadequately considered by the Sentencing Commission.

We review a district court's downward departure from the Sentencing Guidelines for abuse of discretion. *Koon v. United States,* —— U.S. ——, —— – ——, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996); *United States v. Barajas–Nunez,* 91 F.3d 826, 831 (6th Cir.1996). An error of law in the interpretation or application of the guidelines constitutes an abuse of discretion. *United States v. Valentine,* 100 F.3d 1209, 1210 (6th Cir.1996). Moreover, the deference due to the district court depends upon the nature of the question presented. " '[W]hether a factor is a permissible basis for departure under any circumstances' " is a question of law for which we need not defer to the district court's resolution. *Barajas–Nunez,* 91 F.3d at 831 (quoting *Koon,* —— U.S. at ——, 116 S.Ct. at 2047).

Proper application of the Guidelines requires the court to impose a sentence within the guidelines range,

> unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b); *see* U.S.S.G. § 5K2.0. To determine whether a circumstance was adequately taken into consideration by the Commission, courts should "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b); *see Koon,* —— U.S. at ——, 116 S.Ct. at 2044.

The Guidelines Manual informs that the Commission intended to carve out a "heartland" of situations for each guideline, or "set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch. 1, pt. A, intro. comment. 4(b). The Commission explained that it did not adequately account for "atypical" cases, or situations "where conduct significantly differs from the norm," where departure may be warranted. *Id.; see Koon,* —— U.S. at ——, 116 S.Ct. at 2044. Accordingly, before a sentencing court departs from the guideline range, certain aspects of a case must be found sufficiently unusual for the case to fall outside of the heartland of scenarios contemplated in the Guidelines. *Koon,* —— U.S. at ——, 116 S.Ct. at 2046. Weaver's situation, however, lies squarely within the norm contemplated in her applicable guideline; the court therefore abused its discretion in departing from the guideline range.

The Sentencing Commission specifically sought to impose different sentences depending upon the severity of the criminal conduct. U.S.S.G. ch. 1 pt. A, intro. comment. 3; *see United States v. Brewer,* 899 F.2d 503, 507 (6th Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). For theft and fraud offenses, the Commission reasoned that severity would be based, in part, on the amount of loss due to the theft or fraud: "The value of the property stolen plays an important role in determining sentences for theft and other offenses involving stolen property because it is an indicator of both the harm to the victim and the gain to the defendant." U.S.S.G. § 2B1.1, commentary, backgr.; *see* U.S.S.G. §§ 2B1.1, 2F1.1. In ordinary circumstances, a person who steals credit cards from the mail and makes eleven-thousand dollars of unauthorized charges should receive a sentence below, but not necessarily far below, that of a person who cheats a bank out of hundreds of thousands of dollars.

---

range failed to provide the parties with reasonable notice prior to the sentencing hearing that it was contemplating departure, as required by Rule 32 of the Federal Rules of Criminal Procedure and *Burns v. United States,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). *See*

Appellant's Br. at 8 n.4. The government, however, did not pursue the notice issue further. For this reason, and because we conclude that the district court abused its discretion in departing, we need not address the matter.

Though the value of property lost due to theft or fraud directly affects the sentence range for those offenders, the Commission did not establish a uniform margin of increase. For example, sentencing levels B and C for fraud offenses are separated by $3,000, yet, approaching the higher-end of fraud offenses, the margin of increase rises dramatically. Levels J and K are separated by $150,000, and millions of dollars separate each sentencing level beyond level M. *See* U.S.S.G. § 2F1.1(b)(1) (table). This progressive margin of increase results in fraud offenders at the low end receiving sentences that appear harsh when compared with high-level fraud offenders. The Commission, however, explicitly classified as "serious" low-level fraud and other white-collar offenders:

> Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are "serious."
>
> The Commission's solution to this problem has been to write guidelines that classify as serious many offenses for which probation previously was frequently given and provide for at least a short period of imprisonment in such cases. The Commission concluded that the definite prospect of prison, even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm.

U.S.S.G. ch. 1 pt. A, intro. comment. 4(d). Thus, the Commission deliberately prescribed a relatively high sentencing level for low-level white-collar offenders.

■ As concerned as the lower court here may have been with Weaver's relatively high guideline range, dissatisfaction with a range is not an appropriate basis for sentencing outside of the range. U.S.S.G. § 5K2.0, commentary. Nor should the court escape its sentencing confines by citing deliberate disparities in the guideline itself as an unusual factor not adequately taken into account by the Commission: "[A] sentencing court should not treat as unique or unusual factors, those circumstances that the guidelines have already taken into account." *Brewer*, 899 F.2d at 511. Such an argument is akin to the claim, which this court has rejected, that the disparity in sentencing levels for crack versus powder cocaine serves as a basis for departure. *See United States v. Gaines*, 122 F.3d 324 (6th Cir.1997) (holding that district courts do not have the statutory authority to depart downward on the Sentencing Commission's determination, rejected by Congress, that the 100:1 ratio for crack and powder cocaine should be eliminated; collecting cases rejecting constitutional challenges to the 100:1 ratio); *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir.1991) ("[T]he 100:1 ratio is not a sufficiently unusual circumstance to justify a downward departure."). The district court cannot rest a departure solely upon a disparity created deliberately by the Sentencing Commission that is not the result of atypical circumstances nor present to an unusual degree in the particular circumstance.

In this case the district court's justification for departure was not particular to Weaver, for her case did not especially deviate from the norm. That Weaver was punished harshly for relatively minor unauthorized credit card use when compared with another person's relatively light sentence for extensive bank fraud resulting in significant loss does not remove Weaver's case from the heartland of situations governed by the applicable guideline. The disparate scheme was deliberately established by the Commission to acknowledge the "serious" nature of low level white-collar crime. Since the sentencing court did not identify, and nothing in the record before us suggests the presence of, any other factors that would bring Weaver's case outside this heartland, the sentencing court had no legal basis to depart downward.

### III

■ The Sentencing Commission deliberately subscribed to progressive sentencing levels for theft and fraud offenses, treating relatively minor offenses as serious under the guidelines. That this arrangement produces disproportionate results between high

and low-level offenders cannot serve as the legal basis for a downward departure absent unusual circumstances in the particular situation. We therefore **VACATE** Weaver's sentence and **REMAND** for resentencing consistent with this opinion.[2]

**2.** Weaver focuses her appellee's brief on arguing that she should have received, or should now receive, an adjustment to account for her acceptance of responsibility under U.S.S.G. § 3E1.1. Weaver, however, did not file a cross appeal to preserve this issue for appeal; we are therefore precluded from considering her argument for extension of relief. *See United States v. Neal*, 93 F.3d 219, 224 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997).

