UNITED STATES of America,
Plaintiff–Appellee,

v.

German VALDEZ–TRUJILLO,
Defendant–Appellant.

No. 00–1154.

United States Court of Appeals,
Sixth Circuit.

June 6, 2001.

**552**

Before NORRIS and COLE, Circuit Judges, HOLSCHUH,* District Judge.

OPINION

COLE, Circuit Judge.

Defendant–Appellant German Valdez–Trujillo appeals the district court's denial of his request for a downward departure following his plea of guilty to the charge of illegally reentering the United States in violation of 8 U.S.C. § 1326(b)(2). Under the terms of the Rule 11 plea agreement, Defendant reserved the right to request a downward departure from his sentencing range on the bases of family ties and responsibilities, cultural assimilation, and lesser harms. At sentencing, Defendant argued that he was entitled to a downward departure as authorized under United States Sentencing Guideline §§ 5H1.6, 5K2.0, and 5K2.11.[1] Defendant's Presentence Investigation Report ("PIR") calculated his offense level at 21 with a criminal history category III, which put him in a sentencing range of 46 to 57 months. The district court adopted the PIR, sentenced Defendant to 46 months in prison, and denied Defendant's motion for a downward departure. For the reasons that follow, we DISMISS the appeal.

---

* The Honorable John D. Holschuh, United States District Court for the Southern District of Ohio, sitting by designation.

1.   Section 5H1.6 states:

Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.

U.S.S.G. § 5H1.6 (1998). Section 5K2.0 states:

[T]he sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis.

U.S.S.G. § 5K2.0 (1998). Section 5K2.11 states:

Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected. In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

U.S.S.G. § 5K2.11 (1998).

## BACKGROUND

In 1976, Defendant moved to the United States from Mexico when he was twelve years old. In 1989, Defendant was arrested and charged with a state drug offense; while out on bond, he was arrested and charged with a second drug offense. He pled guilty to both offenses and was sentenced to fourteen years in prison. In October 1995, Defendant married Marciela Del Rio, and in May 1996, shortly after his release from jail, he was deported for being an alien convicted of an aggravated felony. He illegally reentered the country less than one month later but was not arrested until 1998. He was not prosecuted for this illegal reentry but promptly was deported. He again illegally reentered the country within a week. On neither of these occasions did Defendant apply for or receive permission to reenter the United States.

In July 1999, while Defendant was working as a truck driver in Michigan, a police officer stopped Defendant for not having operational tail or brake lights on his truck. During this routine traffic stop, the officer conducted a records check and discovered that the Immigration and Naturalization Service ("INS") had issued a warrant indicating that Defendant was a deportable alien with an aggravated felony conviction. The officer arrested Defendant and turned him over to the INS, which, in turn, charged Defendant with reentry of a removed alien in violation of 8 U.S.C. § 1326(b)(2).

The issue before us is whether we may review the district court's denial of Defendant's motion for a downward departure, and if so, whether the district court abused its discretion in denying the motion.

## DISCUSSION

### I. Standard of Review

We review a district court's decision to grant a downward departure for an abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 91, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Weaver,* 126 F.3d 789, 792 (6th Cir.1997). "[A] district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *United States v. Crouse,* 145 F.3d 786, 788 (6th Cir.1998) (quoting *Koon,* 518 U.S. at 98) (omission in original). A district court's refusal to grant a downward departure generally is not reviewable on appeal. *See United States v. Landers,* 39 F.3d 643, 649 (6th Cir.1994) ("Ordinarily, a sentence conforming to the range mandated by the guidelines cannot be appealed simply because the trial judge refused to award a downward departure."). Only under circumstances where the district court incorrectly believed that it lacked discretion to depart downward may we review a district court's denial of a downward departure. *See United States v. Coleman,* 188 F.3d 354, 357 (6th Cir.1999) (en banc) ("An appellate court may only review a denial of a motion for a downward departure if the district court judge incorrectly believed that she lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines.") (internal quotation marks and alteration omitted). Finally, in order to determine whether a district court's refusal to depart downward was based upon a legal conclusion that it lacked the requisite authority, or whether it simply was an exercise of discretion, we must review the sentencing transcript. *See United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995).

### II. Sentencing Transcript

We recognize that a sentencing judge has no duty "to state affirmatively that he knows he possesses the power to make a downward departure, but declines

to do so." *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995). As we recently emphasized:

> [A]n appellate court should be reluctant to treat as ambiguous a ruling which does not affirmatively state that the judge knew he could depart downward but failed to do so. We should therefore assume that a district court is exercising its proper discretion when it concludes that a downward departure is unwarranted.

*United States v. Owusu,* 199 F.3d 329, 349 (6th Cir.2000) (internal quotation marks and citations omitted).

▮ Although Defendant argues that he was entitled to a downward departure on all of the grounds asserted–family ties and responsibilities, cultural assimilation, and lesser harms–during oral argument, he focused on the district court's failure to grant a downward departure based on cultural assimilation grounds. As this Court has yet to recognize "cultural assimilation" as valid grounds for departure,[2] Defendant relies on the Ninth Circuit's decision in *United States v. Lipman,* 133 F.3d 726 (9th Cir.1998), which held that a district court has the authority to consider cultural assimilation as a basis for departing downward. *See also United States v. Sanchez–Valencia,* 148 F.3d 1273 (11th Cir.1998) (same). Defendant argues that not only was he entitled to a downward departure on cultural assimilation grounds, but that the case is properly before us on review because the sentencing transcript is devoid of any mention of cultural assimilation. Thus, Defendant argues, the district court obviously believed it lacked the authority to depart downward on those grounds.

Defendant's argument is without merit. To the contrary, it is clear from the sentencing transcript that the district court was aware that Defendant was asserting cultural assimilation, as well as family ties and responsibilities and lesser harms, as grounds for a downward departure. During the sentencing hearing, defense counsel informed the district court:

> I'm asking the Court to consider a downward departure for the reasons I've stated in the Sentencing Memorandum. Understanding that the Court's read the memo. I'll be brief. I think a departure would be appropriate, your Honor, under any of the grounds, either individually or collectively. I've stated in the sentencing memorandum.

Upon further examination of the sentencing transcript, we find that the district court knew that it had the authority to depart downward on the grounds asserted and simply chose not to based on the circumstances of Defendant's particular case. Indeed, the district court explained that it found no reason to grant a departure on "any of the bases that the defense and defendant has [sic] relied upon." The following excerpt from the sentencing transcript illustrates that the district court recognized its authority to depart from Defendant's sentence:

> Even if I were-which I'm not going to do, *even if I* were *to decide not to incarcerate* him at all but, rather, order INS to make a determination as to his deportation status, that he would be deported rather than incarcerated, as I said, *I'm not considering that,* I don't understand how that serves the policy objectives

---

2. In an unpublished decision from this Court, we affirmed the denial of a defendant's request for a downward departure based on cultural assimilation. *See United States v. Yee,* 5 Fed.Appx. 433 (6th Cir.2001) (unpublished). Without comment as to whether the district court had the authority to depart downward on cultural assimilation grounds, we declined to review the denial because there was no evidence that the district court believed it was without authority to depart downward. *See id.* at 434.

you're relying on upon for a downward departure.

(emphasis added). The language used by the district court reveals that the court understood its power to reduce Defendant's sentence but chose not to do so because the purpose and policy objectives of the guidelines simply would not be served in Defendant's case.

Because there is nothing in the record to indicate that the district court denied Defendant's motion for a downward departure on the grounds that it believed it lacked the authority to grant such a departure, we must assume that the district court recognized its authority and exercised its proper discretion when it concluded that a downward departure was not warranted. *See Owusu,* 199 F.3d at 349. Therefore, we need not reach the question of whether Defendant was entitled to a downward departure, particularly on cultural assimilation grounds, or whether a district court in our circuit even has the authority to depart on such grounds, because this case is not properly before us on review.

## CONCLUSION

Accordingly, we DISMISS the appeal.

HOLSCHUH, J., dissenting.

HOLSCHUH, District Judge.

This case involves the question of whether "cultural assimilation" is a legal ground for a downward departure from an imprisonment range fixed by the Sentencing Guidelines, a question which, as the majority notes, has not yet been answered by the Sixth Circuit. Because the majority concludes that the record does not indicate that the district court's denial of defendant's motion for a downward departure was based on a belief that it lacked the authority to grant such a departure, the appeal is dismissed. The question of "whether a district court in our circuit

even has the authority to depart (on cultural assimilation grounds)" is specifically left unanswered. Majority opinion at 6. It is because I believe this important question was expressly raised in the district court, but was not discussed, much less ruled upon, by the district judge, I would reverse and remand for a determination of this legal question in the first instance by the district court.

The issue of cultural assimilation as a basis for a downward departure was initially brought to the district judge's attention by the Rule 11(e)(1)(c) plea agreement. In that agreement the defendant reserved the right to argue for a downward departure on three grounds: (1) the defendant's family ties and responsibilities, (2) his cultural assimilation, and (3) his return to the United States being a lesser harm than the destruction of his family. The plea agreement also stated that the government did not agree to any departure and would oppose such a motion. JA at 78, 113–14. The presentence investigation report prepared for the court referred to this provision of the plea agreement, and also alerted the Court to the fact that defendant would seek such a departure at the time of sentencing. JA at 122.

Prior to the sentencing hearing, the defendant filed a Sentencing Memorandum in which these three grounds for a departure were argued. With respect to cultural assimilation, the defendant relied upon cases from two circuits that have recognized cultural assimilation as a legal ground for a downward departure, *United States v. Lipman,* 133 F.3d 726 (9th Cir. 1998) and *United States v. Sanchez–Valencia,* 148 F.3d 1273 (11th Cir.1998), JA at 4. The government filed a brief in response to defendant's sentencing memorandum in which the government argued that cultural assimilation is not a valid basis for a downward departure, because, according to the

government, cultural assimilation "relates to and is dependent upon his (the defendant's) national origin" and "Guideline § 5H1.10 flatly bars the consideration of such factors, as they are not 'relevant in the determination of a sentence.'" JA at 34.[1] With respect to the separate ground of family ties and responsibilities, the government argued that the circumstances of this case do not take it out of the heartland of cases covered by the guidelines and, therefore, § 5H1.6, which states that family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the guideline range, is applicable in this case.

At the sentencing hearing, the district judge did not resolve the legal issue of whether cultural assimilation is or is not a valid basis for a downward departure in illegal re-entry cases, although this issue was again raised by the defense counsel:

> With that in mind and using some of the provisions of the guidelines which exist, and I draw the Court's attention to 501.6,[2] several courts mostly, the *Lipman* court, the Ninth Circuit case, have found that in using as a basis the family responsibility grounds for departure, that aliens, in certain circumstances, in circumstances where there's something that's been called cultural assimilation, that that is an appropriate authorized ground for a sentencing Court to grant a downward departure then, in the event the Court finds that that condition exists. JA at 90.

According to my reading of the sentencing transcript, the district judge discussed, and resolved, only the question of whether the defendant's family ties and responsibilities were of a nature as to take this case

out of the heartland of cases considered by the Sentencing Commission—a distinctly different ground for departure from cultural assimilation. The district judge correctly, in my view, noted that the defendant was going to be deported to Mexico and would not be returning to Chicago to support his family who lived there.

> THE COURT: Mr. Tholen, let me ask you a question.
>
> MR. THOLEN: Yes.
>
> THE COURT: What purpose is served by a downward departure from your client's perspective?
>
> One of two things is going to happen. He's either going to be incarcerated for X period of time or X plus Y period of time and then he's going to be deported.
>
> \*   \*   \*   \*   \*   \*
>
> THE COURT: My point is this. I don't see what purpose in terms of family ties, a downward departure is going to serve.
>
> Mr. Valdez–Trujillo's now [on] his third conviction. He is most certainly going to be deported—
>
> MR. THOLEN: That's correct.
>
> THE COURT:—following his period of incarceration. So relying upon family ties and obligations to his family as a bread winner, seems to me, irrelevant.

JA at. 93–94

> \*   \*   \*   \*   \*   \*
>
> THE COURT: Let me ask you a question, again, Mr. Tholen. You're missing the point here. I'm trying to go to the bottom line.
>
> Even if I were—which I'm not going to do, even if I were to decide not to

---

1. § 5H1.10 provides:

   *Race, Sex, National Origin, Creed, Religion, and Socio–Economic Status* (Policy Statement) These factors are not relevant in the determination of a sentence.

2. The reference to § 501.6 is an obvious typographical error. The correct reference is § 5H1.6.

incarcerate him at all but, rather, order INS to make a determination as to his deportation status, that he would be deported rather than incarcerated, as I said, I'm not considering that, I don't understand how that serves the policy objectives you're relying on upon (sic) for a downward departure. He's not going to be supporting his family, he's going back to Mexico.

MR. THOLEN: What I suggest Your Honor—

THE COURT: He's not going to be with his family. Those are things I can't do anything about.

JA at 95–96.

In ruling on defendant's motion for a downward departure, the district judge said:

I simply don't find any basis under the law to grant a downward departure, given the defendant's criminal history and given the fact that the defendant, in any event, is going to be deported immediately upon the completion of his term of incarceration.

The Court cannot justify a downward departure for purposes of family responsibilities here in this country when, in fact, as soon as the defendant is released he is going to be removed from his family anyway and deported back to Mexico.

Now the defendant says that his family is going to join him down there, that may be their intent now.

But at any rate, it seems to the Court that is somewhat speculative as to whether or not they really will join him in two years or three years of four years after he was (sic) completed, whatever sentence the Court gives him.

But beyond that, there is simply no policy basis here, given the defendant's record and given his intentional reentry as a deported alien, to depart downward in any of the basis that—any of the

bases that the defense and defendant has relied upon.

JA at 105–106.

From my reading of the sentencing hearing transcript, the district judge (1) focused on and decided the issue of whether defendant's family ties and responsibilities justified a downward departure, and found that these factors did not warrant a departure in view of defendant's ultimate deportation to Mexico; (2) did not decide the contested issue of law of whether cultural assimilation is a legal ground for departure; and (3) found in a conclusory manner that there was no "policy basis," because of defendant's conduct, to depart downward on any of the bases relied upon by the defendant.

The majority finds "that the district court knew that it had the authority to depart downward on the grounds asserted and simply chose not to based on the circumstances of Defendant's particular case." Majority opinion at 5. I cannot find any evidence in the transcript that the district judge knew that he had authority to depart downward on the basis of cultural assimilation, a contested question of law that was raised and briefed by the parties and which has not yet been decided by the Sixth Circuit Court of Appeals. It is, in short, unclear whether the district judge believed—as argued by the government—that cultural assimilation is *not* a legal basis for a downward departure in cases of this nature, or whether the district judge believed—as the Ninth Circuit held in the *Lipman* case—that cultural assimilation *is* a legal basis for a downward department, but declined to depart downward because of defendant's conduct which, in the court's view, foreclosed *any* ground for a downward departure.

I am aware that the Court may only review a denial of a motion for downward departure if the district judge incorrectly

believed that he or she lacked the authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines. *See United States v. Coleman,* 188 F.3d 354, 357 (6th Cir.1999). I am equally aware that it is not necessary for the district judge to state affirmatively that he or she possesses the power to make a downward departure, but declines to do so. *See United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995). These decisional rules are appropriately applied in the typical case involving a District court's denial of a motion for a downward departure.

In a typical case, the legal ground for a downward departure is either not contested or, if contested, is decided by the district judge. In the latter situation, if the district judge decides that the asserted ground for departure is not a legal ground and on this basis refuses to depart, the defendant may appeal. If the district judge decides that the asserted ground for departure is a legal ground and departs on this basis, the government may appeal. The present case, however, is not a typical case, because the contested issue of whether cultural assimilation is a legal ground for departure was never decided by the district judge.

The *Lipman* case relied upon by defendant is similar to the present case. *See* 133 F.3d 726. It, too, involved an alien who reentered the United States after being deported for a felony conviction in violation of 8 U.S.C. § 1326 and who was sentenced pursuant to § 2L1.2 of the Sentencing Guidelines.[3] The defendant pointed out that he had been brought to the United States as a child, had attended schools here, was married, and his entire family resided in the United States. He contended that his illegal reentry into this country was motivated by his cultural, emotional and psychological ties to this country developed over the years he had been here. He sought a downward departure based on his cultural assimilation into American society.

On appeal from the district court's denial of his motion, the Ninth Circuit held that:

> Because the Sentencing Commission has never addressed or proscribed "cultural assimilation" *per se* as a factor that may justify departure, we hold that a sentencing court has authority under U.S.S.G. § 5K2.0 to consider evidence of cultural assimilation.

*Id.* at 730.

The *Lipman* court recognized that under § 5H1.6 family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, but pointed out that under § 5K2.0 such circumstances may be relevant if "present to an unusual degree" such that the case is distinguished "from the heartland cases ... in a way that is important to the statutory purposes of sentencing." *See Lipman,* 133 F.3d at 730. The court found that cultural assimilation may be relevant to § 2L1.2 if a district court finds

---

**3.** § 2L1.2 provides:

*Unlawfully Entering or Remaining in the United States*

(a) Base Offense Level: 8

(b) Specific Offense Characteristic

  (1) If the defendant previously was deported· after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

    (A) If the conviction was for an aggravated felony, increase by 16 levels.

    (B) If the conviction was for (1) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offense, increase by 4 levels.

that a defendant's unusual cultural ties to the United States—rather than ordinary economic incentives—provided the motivation for the defendant's illegal reentry into the United States, and that a defendant's culpability might be lessened if his motives were familial or cultural rather than economic. Cultural assimilation, while "akin to the factor of 'family and community ties'" discussed under § 5H1.6, serves to mitigate defendant's culpability for the offense and, in a proper case, would be a valid ground for a downward departure. The departure is not based on a need for the defendant to support his family, but on the defendant's degree of culpability for the offense of illegally reentering the United States.

Unlike the present case, the court in *Lipman* recognized its authority to consider cultural assimilation as a potential basis for departure. The district court, however, denied defendant's motion because, after assessing the specific facts of the defendant's case, the court found that Lipman's family ties were not so unusual as to justify a downward departure. Moreover, the district court in *Lipman* "made its decision after reviewing a presentence report that recognized the court's authority to depart downward on the basis requested, but disputed the appropriateness of a departure on the facts presented." *Id.* at 732.

In the present case, the presentence report simply pointed out that a cultural assimilation ground for departure would be argued, and, as noted earlier, whether such a factor is a valid ground for departure was sharply contested by the government prior to the sentencing hearing.

In view of the fact that this Court has not yet decided whether cultural assimilation is a factor that may mitigate a defendant's culpability and justify a downward departure, and because this question was presented to but not decided by the district court, I would vacate the sentence and remand this case to the district court with direction to conduct a new sentencing hearing for the purpose of determining whether cultural assimilation is a valid ground for departure. If the district court should determine that it is a valid ground for departure, then the district court, in the exercise of it discretion, can either grant or deny the motion for a downward departure and sentence the defendant accordingly. The unresolved issue would thus be resolved, and the stage would be set for the possibility of an appeal to this Court for a determination of a legal question, yet to be decided in this Circuit, that is of obvious importance to the sentencing process in illegal re-entry cases.