**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0261n.06
Filed: April 9, 2007

**No. 05-2702**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ALBERTO LOZANO-ALVAREZ, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Appellant. | ) | |

Before: COLE, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge. After being convicted of illegally reentering the United States,

Alberto Lozano-Alvarez twice asked the district court to depart from the guidelines based on cultural

assimilation, and the district court twice refused. Because Lozano-Alvarez has failed to show how

the district court's refusal to consider such a departure could have benefitted him in view of his

extensive criminal record and his serial illegal re-entries and because the district court at any rate

chose not to exercise its post-*Booker* discretion to vary the sentence below the advisory guidelines

(an exercise of discretion that Lozano-Alvarez does not challenge), we affirm.

I.

A federal jury found Lozano-Alvarez guilty of knowingly entering the United States after

being removed for committing an aggravated felony. *See* 8 U.S.C. §§ 1326(a), (b)(2). Faced with

a guidelines range of 92–115 months, Lozano-Alvarez asked the district court to depart downward from the guidelines for, among other reasons, his family circumstances and his assimilation into American culture. After acknowledging the "positive draw . . . to the United States" for Lozano-Alvarez because of his "family, . . . his five children," who live here, "and his spouse, who is a United States citizen herself," JA 107, the district court refused to depart from the guidelines based on Lozano-Alvarez's "family ties and responsibilities" because it did "not believe [that] the facts justif[ied] a departure on that basis," JA 107–08. The district court also denied a departure on cultural-assimilation grounds, reasoning that "the [Sixth] [C]ircuit does not recognize cultural assimilation as a valid ground for departure" and concluding that it did "not have discretion to depart downward" on this basis. JA 108. The district court imposed a 92-month prison term.

Lozano-Alvarez appealed his sentence. With the parties' consent, the Sixth Circuit remanded the case to the district court for resentencing based on *United States v. Booker*, 543 U.S. 220 (2005). Doc. 52 (Sixth Circuit Order, August 4, 2005).

At his second sentencing hearing, Lozano-Alvarez asked the district court to reconsider his requests for a downward departure under the guidelines. While recognizing that "[t]he guidelines . . . provide opportunities for downward departures," the district court declined to "second guess" its earlier decision. JA 136. As before, then, Lozano-Alvarez was left with a guidelines range of 92–115 months. In exercising its post-*Booker* discretion, the district court observed that the guidelines "provide guidance that requires my considered attention" and that they do not lead to an "exceedingly harsh" sentence in this case. JA 136. Noting that, "as they say in the securities trade,

past performance is sometimes an indication of future conduct," JA 135, the district court reviewed Lozano-Alvarez's criminal history—"a rather consistent and somewhat unbroken chain of criminal violations," including convictions for possession of marijuana (twice), possession of marijuana with intent to distribute (once), carrying a concealed weapon (twice), illegal reentry after removal (three times) and escape from custody (once). JA 136. The district court further noted that Lozano-Alvarez "has eight prior verified deportations," so "it would be foolish to think there would not be another attempt at entering the United States if he were deported." JA 136–37. In all, Lozano-Alvarez's criminal history "suggest[ed] a disrespect for the law," JA 137, and the district court decided that the "original sentence of 92 months" was "an appropriate sentence," JA 138.

## II.

Lozano-Alvarez raises just one issue on appeal—"[w]hether the district court erred in failing to recognize its authority to consider a downward departure based on cultural assimilation." Br. at 3. To depart from the sentencing guidelines, as opposed to vary a sentence based on the advisory nature of the guidelines, a district court must find aggravating or mitigating circumstances of a kind or degree not adequately taken into account by the guidelines. U.S.S.G. § 5K2.0(a)(2)–(4); *see Koon v. United States*, 518 U.S. 81, 98 (1996) ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."); *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir. 1999) (en banc). And in deciding whether to depart (again in contrast with deciding whether to vary a sentence), "[t]he court must bear in mind the

Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." *Koon*, 518 U.S. at 96 (internal quotation marks omitted).

Several of our sister circuits have acknowledged that cultural assimilation may present a cognizable basis for a downward departure under extraordinary circumstances, though they generally have proceeded not to find those circumstances present. *See, e.g.*, *United States v. Rodriguez-Montelongo*, 263 F.3d 429, 433 (5th Cir. 2001); *United States v. Sanchez-Valencia*, 148 F.3d 1273, 1274 (11th Cir. 1998); *United States v. Lipman*, 133 F.3d 726, 731 (9th Cir. 1998). Thus far, our court has not recognized cultural assimilation as a cognizable basis for a downward departure. In *United States v. Vasquez-Duarte*, 59 F. App'x 625 (6th Cir. Feb. 12, 2003), for example, we noted that "[t]his court has not yet recognized cultural assimilation as a basis for downward departure," then proceeded to hold that an "absence of any 'extraordinary circumstances'" would have prevented such a departure in any event in that case. *Id.* at 627–29; *see also United States v. Valdez-Trujillo*, 11 F. App'x 551, 554–55 (6th Cir. June 6, 2001) (affirming a district court's refusal to depart on cultural assimilation grounds); *United States v. Yee*, 5 F. App'x 433, 434 (6th Cir. Feb. 27, 2001) (same).

We follow a similar path here. Even if cultural assimilation were a cognizable basis for a downward departure, a point we need not decide today, Lozano-Alvarez presents an exceedingly poor candidate for such a departure. His assimilation, in short, is not the kind that the guidelines (or any other American law) were designed to accommodate. *Cf. Williams v. United States*, 503 U.S. 193, 203 (1992) (holding that if "the district court misapplied the Guidelines, a remand is appropriate

unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed").

Lozano-Alvarez spent the first 18 years of his life in Mexico and thus grew up in Mexico, not the United States. He is, in short, not being asked to leave the only culture he has ever known. To the extent he absorbed American culture after age 18, that assimilation may favor his request for a downward departure only to the degree it occurred in connection with a lawful presence in the country, which in this instance was relatively brief. He legally immigrated to the United States in 1967 but, five years later, was found possessing marijuana and carrying a concealed weapon. In 1973, he was removed from the United States and has been prohibited from returning ever since.

In the interim, it is true, Lozano-Alvarez has raised a family in Saginaw, Michigan, and he points to this reality as diminishing his culpability for illegally re-entering the United States eight times. But he raised the point of family connections as a basis for a downward departure in the district court, and the court refused—a point he does not challenge on appeal, presumably because the guidelines discourage such departures. *See* U.S.S.G. § 5K1.6 ("[F]amily ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."). Even if we were to consider family connections as one among several measures of cultural assimilation, the record shows that Lozano-Alvarez did not spend his time in this country exclusively fostering family and community ties in Saginaw, Michigan. He was arrested for possessing marijuana in Missouri in 1988, convicted of possession in Arkansas in 1998, and convicted of possession with intent to distribute in Oklahoma in 1999. Lozano-Alvarez offers no explanation why his family connections

or any other aspect of his cultural-assimilation claim led him to violate the criminal laws of several States.

Even aside from the itinerant nature of his criminal record, the sum total of it—convictions for possession of marijuana (twice), possession of marijuana with intent to distribute (once), carrying a concealed weapon (twice), illegal reentry after removal (three times) and escape from custody (once)—shows that, however much Lozano-Alvarez has assimilated to this country, it is not the kind of assimilation that warrants mitigation. To the extent cultural assimilation might be a cognizable basis for a downward departure, it is only assimilation to lawful American culture, not to a life of crime, that would help him.

To establish a basis for a downward departure, moreover, the defendant not only must show that his case falls outside the heartland of cases but also must show that the downward departure will respect the other § 3553(a)(2) objectives—"to promote respect for the law," 18 U.S.C. § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). *See* 18 U.S.C. § 3742(j)(1) (defining a factor as "a 'permissible' ground of departure if it . . . advances the objectives set forth in section 3553(a)(2)" and "is justified by the facts of the case"). Yet, in this instance, Lozano-Alvarez has played a game of cat and mouse with immigration officials over the past 35 years, leading to his removals in 1973, 1974, 1976, 1978, 1980, 1988, 1995 and 2002. At the least, these repeated violations of the immigration laws "suggest[] a disrespect for the law," JA 137, and, more likely, they enhance the need for deterrence. As the district court observed, "it would

be foolish to think there would not be another attempt at entering the United States if he were deported." JA 137. Even if Lozano-Alvarez's assimilation into American culture were exceptional (which in at least one respect it is), he has not offered any plausible basis why this type of assimilation represents a basis for a *downward* departure.

No less importantly, the district court refused to sentence Lozano-Alvarez outside the guidelines range even after it recognized its post-*Booker* discretion to do so. At the second sentencing hearing, the district court noted that it was "obliged to consider the applicable category of the offense as set forth in the sentencing guidelines" but that it could ignore the guidelines in the exercise of its discretion. JA 135–36. The district court then determined that the guidelines provided "appropriate guidance to the court," JA 138, in light of "the nature and circumstances of the offense and Mr. Alvarez's history and Mr. Alvarez himself," JA 136. Lozano-Alvarez's repeated violations of the immigration laws, the district court commented, "suggest[ed] a disrespect for the law," making greater imprisonment necessary "to provide just punishment and promote respect for the law." JA 137; *see* 18 U.S.C. § 3553(a)(2)(A). And given Lozano-Alvarez's past conduct and ties to the United States, the district court thought "it would be foolish to think there would not be another attempt at entering the United States if he were deported." JA 137. Both deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), and the need "to guard against additional illegal re-entry," JA 138; *see id.* § 3553(a)(2)(C), supported the district court's belief "that the original sentence was a just and reasonable sentence," JA 138. Given the district court's reasoned (and unchallenged) decision not to *vary* Lozano-Alvarez's sentence downward under the broad discretion afforded to it by *Booker*

No. 05-2702
*United States v. Lozano-Alvarez*

and given that a legitimate claim of cultural assimilation could fairly supply the basis for a variance, we have every reason to be confident that the district court's failure to exercise its more limited discretion to depart under the guidelines "did not affect the district court's selection of the sentence imposed," *Williams*, 503 U.S. at 203.

III.

For these reasons, we affirm.