UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Devon LIPMAN, Defendant–
Appellant.

No. 97–50006.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 9, 1997.*

Decided Jan. 8, 1998.

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Maria E. Stratton, Federal Public Defender, and Gerald C. Salseda, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Mary Fulginiti, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

Before: PREGERSON, D.W. NELSON, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Michael Devon Lipman ("Lipman") appeals his twenty-one month sentence imposed pursuant to Sentencing Guideline (U.S.S.G.) § 2L1.2 for illegal reentry after deportation for a felony conviction. Lipman contends that the district court failed to recognize its authority to depart from the Sentencing Guidelines on the basis of Lipman's "cultural assimilation" into American society and that the court erred in denying him a downward departure on that basis. We hold that "cultural assimilation" is a permissible ground for departure under the Sentencing Guidelines, that the district court properly recognized its authority to consider evidence of "cultural assimilation," and that the court exercised its nonreviewable discretion to deny departure on that basis in this case. We therefore affirm.

## BACKGROUND

On July 22, 1994, Lipman lost his permanent resident status and was deported to Jamaica pursuant to 8 U.S.C. § 1251(a)(2) because he had been convicted of numerous felonies including possession of a weapon, attempted possession of marijuana, unlawful imprisonment, two counts of sexual abuse, and attempted robbery. On August 2, 1996, Lipman reentered the United States for the first time since his deportation. His port of entry was Miami. Ten days later, he was arrested in Los Angeles for possession and transportation for sale of approximately thirty-nine pounds of marijuana.

On September 10, 1996, a federal grand jury indicted Lipman on one count of illegal reentry after being deported for a felony conviction, in violation of 8 U.S.C. § 1326(a) and § 1326(b)(1). Lipman pled guilty. At sentencing, Lipman requested a downward departure pursuant to U.S.S.G. § 5K2.0 on the ground of "cultural assimilation." Lipman also requested a downward departure on grounds of "lesser harms" (U.S.S.G. § 5K2.11), "extraordinary family circumstances" (U.S.S.G. § 5H1.6), and a combina-

tion of all the above factors (U.S.S.G. § 5K2.0).

In support of his request for a downward departure based on his cultural assimilation into American society, Lipman contends that he is not the typical illegal reentry defendant because he is a "de facto American," with "significant ties" to the United States. Lipman points out that although he is a Jamaican citizen, he was brought to this country by his mother at the age of twelve and, until his deportation, he had legally resided here for an uninterrupted period of twenty-three years. Lipman attended New York public schools through high school. He married a U.S. citizen, with whom he raised five U.S. citizen children. He also fathered two other American-born children. Lipman's entire family, including his mother, three siblings, five children and wife, reside in the United States as American citizens.

Lipman contends that his cultural assimilation mitigates his culpability for the crime of illegal reentry because his reentry was "motivated by his cultural, emotional and psychological ties to this country ... developed because of a parental decision to emigrate the defendant as a child." In particular, Lipman claims that his reentry was motivated by his desire to visit his disabled U.S. citizen daughter after he learned that she had been sexually assaulted, even though his trip took him to Los Angeles instead of to his daughter's home in New York.

Lipman further contends that he is unlike the typical reentry defendant because, despite his arrest on drug-trafficking charges, his return was motivated by familial concern rather than economic incentives. According to Lipman, the typical reentry defendant lacks cultural or family ties to the United States, is motivated only by economic needs, and "come[s] to this country, commit[s] crimes, go[es] to prison, [and then] get[s] deported and return[s] to repeat the cycle several times."

Moreover, Lipman claims that deportation would cause him greater hardship than it would the typical reentry defendant because the United States is effectively his homeland. According to Lipman, "[i]t is one thing to be returned to one's native land where roots, family, and a familiar culture greet one's arrival. It is quite another to be banished from the only real home country one has known—the country from which sprouted education, marriage and children."

The district court denied Lipman's request for downward departure and sentenced him to twenty-one months in prison. Lipman timely appeals his sentence on the sole issue of whether he is entitled to a downward departure based on his "cultural assimilation" into American society. He contends that the district court failed to recognize its authority to depart downward from the Sentencing Guidelines on this basis and erred in denying his request to do so. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STANDARD OF REVIEW

■ This court has jurisdiction to review the district court's determination of whether it had authority to depart downward under the Sentencing Guidelines. *See United States v. Mendoza,* 121 F.3d 510, 513 (9th Cir.1997). We review departure decisions under a unitary abuse of discretion standard. *See id.* (citing *Koon v. United States,* 518 U.S. 81, –– ––, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996)*). This court need not defer to a district court's determination of whether a particular factor is a permissible basis for departure because that is a question of law. See United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc) (citing *Koon,* 518 U.S. at ––, 116 S.Ct. at 2047).

This court lacks jurisdiction to review a district court's discretionary denial of a downward departure. *See United States v. Webster,* 108 F.3d 1156, 1158 (9th Cir.1997).

### I.

■ Under U.S.S.G. § 5K2.0 and its implementing statute, a departure is appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C.

§ 3553(b). The defendant bears the burden to prove by a preponderance of the evidence that the circumstances of his or her case warrant a downward departure. *See United States v. Anders,* 956 F.2d 907, 911 (9th Cir.1992).

In determining whether a departure is warranted under U.S.S.G. § 5K2.0, a sentencing court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Except for those factors categorically proscribed by the Sentencing Commission as a basis for departure, e.g., race, sex, and national origin, the Guidelines " 'place essentially no limit on the number of potential factors that may warrant departure.' " *Mendoza,* 121 F.3d at 513 (quoting *Koon,* 518 U.S. at ——, 116 S.Ct. at 2050). If a factor has not been categorically excluded by the Sentencing Commission, a sentencing court has no authority to decide to exclude it as a matter of law. *See id.*

Because the Sentencing Commission has never addressed or proscribed "cultural assimilation" per se as a factor that may justify departure, we hold that a sentencing court has authority under U.S.S.G. § 5K2.0 to consider evidence of cultural assimilation.

## II.

Because cultural assimilation is "a factor [that] is unmentioned in the Guidelines," a sentencing court can only depart on this basis after considering "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." *Sablan,* 114 F.3d at 917 (quoting *Koon,* 518 U.S. at ——, 116 S.Ct. at 2045)(internal citation omitted). Each guideline carves out a " 'heartland,' a set of typical cases embodying the conduct" described. 18 U.S.C.App. ch.1, pt. A.4(b). "What falls within the 'heartland' of a[g]uideline is . . . within the discretion and special expertise of the district court." *Mendoza,* 121 F.3d at 515 (citing *Koon,* 518 U.S. at ——, 116 S.Ct. at 2046–47). Before departing from the Guidelines, the sentencing court must therefore decide whether the considered factor, given the facts and circumstances of the case, "is sufficient to take the case out of the [relevant] Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Sablan* 114 F.3d at 917 (quoting *Koon,* 518 U.S. at ——, 116 S.Ct. at 2045 (quoting U.S.S.G. ch.1, pt. A)).

Moreover, the factor of cultural assimilation is akin to the factor of "family and community ties" discussed under U.S.S.G. § 5H1.6. Thus, to the extent that cultural assimilation denotes family and community ties, we hold that the district court has the authority to depart on this basis in extraordinary circumstances. Under U.S.S.G. § 5H1.6, "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. But under U.S.S.G § 5K2.0, such circumstances may be relevant if "present to an unusual degree" such that the case is distinguished "from the 'heartland' cases . . . in a way that is important to the statutory purposes of sentencing." U.S.S.G. § 5K2.0; *see also United States v. Mondello,* 927 F.2d 1463, 1470 (9th Cir.1991) (holding that a court may rely on factors listed in U.S.S.G. § 5H1.1–.6 to justify a departure "in extraordinary circumstances"). Whether a defendant's family and community ties are sufficiently "unusual" or "extraordinary" to warrant departure in a particular case is a factual determination that also lies within the discretion of the district court. *See Koon,* 518 U.S. at —— – ——, 116 S.Ct. at 2046–2047; *see also* U.S.S.G. § 5K2.0 ("Presence of any such factor may warrant departure . . ., under some circumstances, in the discretion of the sentencing court.").

The government attempts to equate cultural assimilation with the prohibited ground of the threat of future deportation. We have consistently held that a sentencing court cannot downwardly depart based on the fact that a defendant faces future deportation. *See United States v. Alvarez–Cardenas,* 902 F.2d 734, 737 (9th Cir.1990) (deportability is not a valid factor for departure because it merely describes the defendant's

status, and does not "affect [defendant's] culpability or the seriousness of the offense."); *see also United States v. Ceja–Hernandez*, 895 F.2d 544, 545 (9th Cir.1990) (rejecting use of deportability as basis for upward departure). "The possibility of deportation does not speak to the offense in question, nor does it speak to the offender's character," and thus is not a proper ground for departure. *Alvarez–Cardenas*, 902 F.2d at 737. Moreover, if deportability were held to be a valid ground for departure, aliens and citizens would always be treated differently simply because of their citizenship status. *See id.*

But cultural assimilation is distinguishable from the threat of future deportation because a defendant's cultural assimilation may speak to his offense and to his character. Recognizing cultural assimilation as a factor that may justify departure therefore would not result in the arbitrary dividing line between all aliens and all citizens that we rejected in *Alvarez–Cardenas*. For example, cultural assimilation may be relevant to sentencing under U.S.S.G. § 2L1.2 if a district court finds that a defendant's unusual cultural ties to the United States—rather than ordinary economic incentives—provided the motivation for the defendant's illegal reentry or continued presence in the United States. Cultural assimilation may also be relevant to the character of a defendant sentenced under U.S.S.G. § 2L1.2 insofar as his culpability might be lessened if his motives were familial or cultural rather than economic. Thus, unlike the general threat of deportation, cultural assimilation is a fact-specific ground for departure that may speak to an individual defendant's offense, his conduct and his character, and not just to possible future events unrelated to the defendant's individual circumstances.

■ In sum, we find that a sentencing court may depart on the basis of cultural assimilation if it finds that the defendant's circumstances remove his case from the heartland of cases governed by the relevant individual guidelines and the Guidelines as a whole.

## III.

■ Lipman contends that the district court erroneously concluded as a matter of law that it lacked authority to depart downward on the basis of cultural assimilation. We disagree. Lipman seizes upon one statement made by the district court: "I cannot find that the tie—the ... cultural assimilation into U.S. society ... is a ground for a downward departure." Read in context, however, this statement does not support Lipman's contention that the district court erred.

■ A district court "need not say affirmatively that it had discretion to depart." *Webster*, 108 F.3d at 1158–59. The district court's explanation of its denial sufficiently indicates that the court recognized its authority to consider cultural assimilation as a potential basis for departure and reflects its discretionary decision not to do so in this case based upon the facts presented. The court stated that Lipman's cultural assimilation was not a "ground for a downward departure" after it considered Lipman's circumstances and determined that they were only "somewhat different" from "the typical case."

The court further determined that Lipman's long-term residency "doesn't amount to a circumstance ... that would justify a downward departure" only after the court had assessed the specific facts of Lipman's case. The court indicated that the only way in which Lipman's case was "unusual" and possibly "atypical" was with respect to "the number of family members who live here in the United States." Even in that regard, the court determined that Lipman's family ties were not so unusual as to justify a downward departure in light of the nature and number of offenses that caused Lipman to lose his residency status in the first place. The district court concluded by stating that "given all of the arguments" that Lipman raised, it could "find no reason whatsoever to depart downwards."

We addressed a similar oral decision by a district court in *Webster*. In *Webster*, the district court stated that it had " 'searched the guidelines, and ... frankly, [did] not see any grounds for departure.' " *Webster*, 108

F.3d at 1158. The statements by the district court in the present case, like that made by the court in *Webster*, "indicate[ ] that [the judge] found no reason to depart, not that [he] believed [he] lacked authority to do so." *Id.* Compare also *United States v. Koenig*, 952 F.2d 267, 273–74 (9th Cir.1991) (finding exercise of discretion where district court concluded that "[t]he downward departure requested does not seem to me to have a basis" and "set the sentence after assessing the facts of the case and [defendant's] culpability"). Moreover, like the district court in *Webster*, the district court here made its decision after reviewing a pre-sentence report that recognized the court's authority to depart downward on the basis requested, but disputed the appropriateness of a departure on the facts presented. *See* 108 F.3d at 1158.

 Thus, the district court recognized its authority to depart based on cultural assimilation and properly considered the factual support for Lipman's argument before exercising its discretion to deny departure. "We lack jurisdiction to review a district court's discretionary refusal to depart downward from the Guidelines." *See Webster*, 108 F.3d at 1158. The district court's denial is therefore not reviewable.

## CONCLUSION

Whether cultural assimilation is regarded as a factor unmentioned in the Guidelines or as a variation of the family and community ties factor discussed under U.S.S.G. § 5H1.6, we conclude that the district court had authority under U.S.S.G. § 5K2.0 and § 1B1.4 to consider Lipman's evidence of cultural assimilation. We also conclude that the district court had the discretionary authority to depart on this basis under U.S.S.G. § 5K2.0 if it found that Lipman's cultural assimilation distinguished his case from U.S.S.G. § 2L1.2's heartland.

The language of the district court's sentencing decision shows that the court properly recognized its authority to consider evidence of cultural assimilation. The district court concluded as a factual matter, however, that the evidence of Lipman's cultural assimilation was insufficient to justify a downward departure. Because the denial of departure

was a proper exercise of the district court's discretion, we lack jurisdiction to review its decision.

AFFIRMED.