REVISED - September 13, 2001

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-51023

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RAMON RODRIGUEZ-MONTELONGO

Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas

---

August 23, 2001

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and SCHELL, District Judge.[*]

SCHELL, District Judge:

The main question before this court is whether cultural assimilation is a permissible ground for downward departure. Because we conclude that cultural assimilation is a permissible ground for downward departure, we VACATE Rodriguez-Montelongo's sentence and REMAND to the district court for it to consider whether Rodriguez-Montelongo is entitled to a downward departure on the basis of cultural assimilation. We also reject Rodriguez-Montelongo's argument that his sentence

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

violates due process because the Supreme Court has previously rejected an identical argument.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellant Rodriguez-Montelongo, a Mexican citizen, was three-years old when he was brought to the United States in 1978.  He later obtained legal resident status, received his education, married, and settled with his wife and four children in Colorado.  On April 22, 2000, Rodriguez-Montelongo was convicted on a felony drug charge and deported.  On April 30, 2000, Rodriguez-Montelongo attempted to reenter the United States without obtaining permission from the Attorney General to apply for readmission.

On August 3, 2000, Rodriguez-Montelongo pleaded guilty to attempting to reenter the United States illegally after deportation, in violation of 8 U.S.C. § 1326.[1]  The presentence report ("PSR") calculated Rodriguez-Montelongo's total offense level as 21.  This computation included a base offense level of 8, an increase of 16 levels because of the prior felony drug conviction, and a

---

[1]  Section 1326 provides in relevant part:

Subject to subsection (b) of this section, any alien who–
> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a) (1999).

downward departure of 3 levels for acceptance of responsibility. He was also assigned a criminal history category of II based upon his prior felony drug conviction and the fact that he was on probation at the time this illegal reentry was attempted. Accordingly, the PSR recommended a guideline sentence range of 41 to 51 months. Rodriguez-Montelongo objected to the recommended range, arguing that the offense charged in the indictment carried a maximum penalty of two-years imprisonment.

At sentencing, the district court concluded that Rodriguez-Montelongo had a qualifying prior aggravated felony drug conviction, which required an enhancement of his sentence under 8 U.S.C. § 1326(b)(2) and § 2L1.2(b)(1)(A) of the United States Sentencing Guidelines (the "Guidelines"). The court then adopted the PSR's sentence-range recommendation. Furthermore, the district court denied Rodriguez-Montelongo's motion to depart downward from the guideline range on the ground of cultural assimilation, stating that "to this point the Fifth Circuit has not recognized [cultural assimilation] as a basis for depart ure, and until they do I'm not going to depart on that basis." Consequently, the district court imposed a sentence of 41-months imprisonment. Rodriguez-Montelongo appeals his sentence.

## II. APPELLATE JURISDICTION

A court of appeals is "generally without jurisdiction to review a sentencing court's refusal to grant a downward departure when its decision is based upon a determination that departure was not warranted on the facts of the case before it." United States v. Thames, 214 F.3d 608, 612 (5th Cir. 2000); see also United States v. Reyes-Nava, 169 F.3d 278, 280 (5th Cir. 1999). Accordingly, this court has jurisdiction over the appeal from the district court's refusal to depart downward only if the refusal was in violation of the law. See United States v. Garay, 235 F.3d 230, 232 (5th Cir. 2000),

cert. denied, 121 S. Ct. 1633 (2001); United States v. Yanez-Huerta, 207 F.3d 746, 748 (5th Cir.), cert. denied, 121 S. Ct. 432 (2000). "A refusal to depart downward is a violation of the law only if the district court's refusal is based on the mistaken belief that the court lacked discretion to depart." Garay, 235 F.3d at 232; Thames, 214 F.3d at 612; Yanez-Huerta, 207 F.3d at 748. Therefore, this court may review a district court's refusal to depart if the district court mistakenly believed that it lacked the authority to depart.

The district court's statement that it would not consider a downward departure for cultural assimilation until this court recognizes it as a basis for downward departure indicates that the district court believed it lacked authority to depart on this ground. As such, the panel has jurisdiction over this appeal.

### III. CULTURAL ASSIMILATION AS A PERMISSIBLE GROUND FOR DOWNWARD DEPARTURE

Section 5K2.0 of the Guidelines permits the district court to make a downward departure "if the court finds 'that there exists a[] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S. Sentencing Guidelines Manual § 5K2.0 (2000) (quoting 18 U.S.C. § 3553(b)). The Supreme Court has explained that the Sentencing Commission "did not adequately take into account cases that are, for one reason or another, 'unusual.'" Koon v. United States, 518 U.S. 81, 93 (1996).

The Guidelines enumerate certain factors that can never be bases for departure. See id. at 93; see also U.S. Sentencing Guidelines Manual § 5H1.10 (prohibiting consideration of race, sex, national origin, creed, religion, and socio-economic status); id. § 5H1.12 (prohibiting consideration of lack

4

of guidance as a youth); id. § 5H1.4 (prohibiting downward departure for drug or alcohol dependence). Aside from the limited number of categorical prohibitions, however, the Sentencing Commission did "not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S. Sentencing Guidelines Manual ch. 1, pt. A, intro. cmt. 4(b); see also Koon, 518 U.S. at 93; Garay, 235 F.3d at 232 n.8. As summarized by the Supreme Court in Koon v. United States:

> So the [Sentencing Reform] Act authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission. The Commission, in turn, says it has formulated each Guideline to apply to a heartland of typical cases. Atypical cases were not "adequately taken into consideration," and factors that may make a case atypical provide potential bases for departure. Potential departure factors "cannot, by their very nature, be comprehensively listed and analyzed in advance," of course. Faced with this reality, the Commission chose to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations that might bear upon the decision to depart.

518 U.S. at 94 (citation omitted) (quoting U.S. Sentencing Guidelines Manual § 5K2.0).[2]

---

[2] The Supreme Court has adopted four questions that a sentencing court should consider before departing:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
2) Has the Commission forbidden departures based on those features?
3) If not, has the Commission encouraged departures based on those features?
4) If not, has the Commission discouraged departures based on those features?

Koon, 518 U.S. at 95 (some internal quotations omitted) (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993)). Pursuant to this framework, if a particular factor, such as cultural assimilation, is not mentioned in the Guidelines, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline[s'] heartland." The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." Id. at 96 (internal quotations and citation omitted).

Rodriguez-Montelongo moved for a downward departure based upon his long-term residence and cultural assimilation within the United States. This court has yet to determine in a published opinion whether cultural assimilation is a permissible basis for downward departure. In a series of unpublished, non-precedential opinions, however, this court appears to have acknowledged that a district court does have the authority to depart downward on the basis of cultural assimilation.[3] See United States v. Terrazas-Acosta, No. 99-50957 (5th Cir. Apr. 13, 2000) (unpublished) (per curiam) ("The record indicates that the district court recognized its authority to depart downward based on cultural assimilation."); United States v. Rodriguez, No. 99-40065 (5th Cir. Oct. 19, 1999) (unpublished) (per curiam) (same); United States v. Ojeda-Martinez, No. 98-50732 (5th Cir. May 27, 1999) (unpublished) (per curiam) (same); United States v. Rangel-Silva, No. 98-40554 (5th Cir. Apr. 8, 1999) (unpublished) (per curiam) (presuming the district court recognized its authority to depart downward on the basis of cultural assimilation).

Moreover, two other circuit courts of appeals have decided that cultural assimilation is a legitimate ground for downward departure. See United States v. Lipman, 133 F.3d 726, 729-31 (9th Cir. 1998); see also United States v. Sanchez-Valencia, 148 F.3d 1273, 1274 (11th Cir. 1998) (per curiam) (relying on Lipman to state that the sentencing court was aware of its authority to depart on this ground).

In United States v. Lipman, the Court of Appeals for the Ninth Circuit concluded that "[b]ecause the Sentencing Commission has never addressed or proscribed 'cultural assimilation' per se as a factor that may justify departure, we hold that a sentencing court has authority under U.S.S.G.

---

[3]Under Fifth Circuit Rule 47.5.4, unpublished opinions issued on or after January 1, 1996, are not precedent but may be persuasive.

6

§ 5K2.0 to consider evidence of cultural assimilation." 133 F.3d at 730. This is because, as discussed supra, except for those factors categorically proscribed by the Commission, the Guidelines "'place essentially no limit on the number of potential factors that may warrant departure.'" Id. (quoting United States v. Mendoza, 121 F.3d 510, 513 (9th Cir. 1997), in turn quoting Koon, 518 U.S. at 106).[4]

The Ninth Circuit ultimately concluded that the district court recognized its authority to depart downward, but chose not to do so on the facts of the case. See id. at 732. Accordingly, the court acknowledged that it lacked jurisdiction to review the district court's refusal to grant Lipman's downward departure motion. See id.

Considering both the Lipman and Sanchez-Valencia decisions and the series of unpublished opinions from this court, we hold that cultural assimilation is a permissible basis for downward departure. Therefore, the sentence should be vacated and the case remanded to the district court for the district court to consider, in its sound discretion, whether Rodriguez-Montelongo's circumstances are so atypical or extraordinary so as to warrant a downward departure on the basis of cultural assimilation.

## IV. DUE PROCESS

---

[4]After the Ninth Circuit determined that the district court had the authority to consider cultural assimilation in departing downward because such a factor was not proscribed by the Guidelines, the court stated that insofar as cultural assimilation is an unmentioned factor, "a sentencing court can only depart on this basis after considering 'the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole.'" Lipman, 133 F.3d at 730 (quoting Koon, 518 U.S. at 96). Relying on Koon, the court stated that circumstances must exist that take the defendant's case out of the Guidelines' "heartland" and that such departures based upon grounds not mentioned in the Guidelines will be "highly infrequent." Id. at 730. The Ninth Circuit also concluded that insofar as the factor of cultural assimilation is "akin to the factor of 'family and community ties,'" a discouraged factor, the district court has the authority to depart in only "extraordinary circumstances." Id.

7

Rodriguez-Montelongo challenges his sentence on the ground that it violates due process. Rodriguez-Montelongo contends that the offense for which he was indicted has a maximum sentence of two-years imprisonment. See 8 U.S.C. § 1326(a). 8 U.S.C. § 1326(b)(2) increases the maximum punishment to twenty years if the defendant was deported after conviction for an aggravated felony. Rodriguez-Montelongo asserts that § 1326(b)(2) creates a separate offense and that an element of this separate offense is a prior aggravated-felony conviction. Because the indictment did not allege a prior aggravated-felony conviction, Rodriguez-Montelongo argues that the only offense charged was that under § 1326(a). Therefore, he contends that because § 1326(a) has a maximum 2-year sentence, the district court exceeded the statutory maximum by sentencing Rodriguez-Montelongo to 41 months in prison.

Rodriguez-Montelongo recognizes that in Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court rejected an argument identical to the one he is making here. See id. at 235. He contends, however, that in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court "cast serious doubt" on Almendarez-Torres's validity. See id. at 489 (stating that "it is arguable that Almendarez-Torres was incorrectly decided"). Rodriguez-Montelongo asserts that he raises this issue here only to preserve it for possible Supreme Court review.

In Almendarez-Torres, the Supreme Court held that the enhanced penalties in § 1326(b) were sentencing factors, rather than elements of separate offenses. See 523 U.S. at 235 ("In sum, we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense."). The Court concluded specifically that a prior conviction need not be treated as an element of the offense, even if it increases the statutory maximum. See id. at 239-47.

Although Rodriguez-Montelongo is correct that Apprendi cast doubt on the continued validity

8

of <u>Almendarez-Torres</u>, it did not overrule that decision. See <u>Apprendi</u>, 530 U.S. at 489-90 (footnote omitted) ("Even though it is arguable that <u>Almendarez-Torres</u> was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity[,] and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset."). It is for this court to apply the law as it exists and for the Supreme Court to overrule its precedent if it so chooses. "'[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.'" <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997) (quoting <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484 (1989)). Therefore, <u>Almendarez-Torres</u> still controls. Accordingly, Rodriguez-Montelongo's argument is foreclosed.

## V. CONCLUSION

For the foregoing reasons, we VACATE Rodriguez-Montelongo's sentence and REMAND to the district court for it to consider whether Rodriguez-Montelongo is entitled to a downward departure on the basis of cultural assimilation.