**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 4 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARTIN PADILLA-MICHEL,

    Defendant - Appellant.

No. 01-1527
D.C. No. 01-CR-122-B
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **McKAY**, Senior Circuit Judge.

---

Two Denver police officers while driving in a marked police car saw the driver of another vehicle make what the officers believed to be an illegal turn from 32nd Street on to Larimer Street in Denver, Colorado. The officers activated the overhead lights on their patrol car and the driver of the other vehicle stopped his car.

Martin Padilla-Michel was a passenger in the stopped vehicle, sitting in the back seat of the car. A second passenger in the vehicle was seated on the right side in the front

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

seat. The officers approached the stopped vehicle from the rear of the car. When the driver of the stopped vehicle rolled down his window, the officers detected the odor of marijuana. One of the officers asked the driver for his driver's license, registration papers and proof of insurance. The other officer testified that, because of the odor of marijuana, he asked the two passengers for their names and any identification papers. The driver had a valid driver's license and he also produced a rental agreement for the car, but the name on the rental agreement did not match the name of anyone in the car. The officers ran the names of the three occupants of the car through their computer system, and the check revealed that Padilla-Michel had an outstanding warrant as a deported alien. A search of the three disclosed no weapons or drugs on their persons, and a search of their vehicle revealed only traces of marijuana, namely, "stubs of joints."

No charges were filed against the driver or the front seat passenger and they were released. However, Padilla-Michel (hereinafter referred to as "the defendant") was charged in a one count indictment in the United States District Court for the District of Colorado with unlawful reentry into the United States after having been deported from the United States for a prior conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§1326(a) and (b)(2). Counsel for the defendant filed a motion to suppress the use at trial of any evidence derived from "his illegal arrest, including his identity and status as an illegal alien." An evidentiary hearing was held on the defendant's motion to suppress, at which time the two police officers, an agent of the

United States Immigration and Naturalization Service, and the driver of the vehicle in which the defendant was riding, testified. The district court then denied the motion to suppress. Later, the defendant entered a conditional plea of guilty pursuant to Fed. R. Crim. P. 11(a)(2). The pre-sentence report set the defendant's offense level at 21, and his criminal history at V, the guideline range being 70 to 87 months imprisonment. The defendant was then sentenced to imprisonment for 70 months. The defendant appeals.

On appeal, counsel argues two grounds for reversal: (1) the district court erred in denying the defendant's motion to suppress "his identity"[1] which was obtained in violation of the Fourth Amendment; and (2) the district court erred at sentencing when it concluded that it "could not" make a downward departure from the guideline range of 70 to 87 months imprisonment, based on the defendant's so-called "cultural assimilation," because of his criminal record. We are not persuaded by either argument.

After the suppression hearing, the district court held, *inter alia,* that "the Fourth Amendment was satisfied as to this defendant *at the time* that the officers determined that he had been deported as an aggravated felon." (Emphasis added). The district court went on to opine that "even assuming a Fourth Amendment violation," the defendant would not be "entitled to a suppression of his identity." The record supports the district court's denial of the defendant's motion to suppress the evidence of "his identity." We agree

---

[1]We are not here concerned, as such, with the defendant's post-arrest statements to the officers or the agent for the INS.

with the district court that the stopping of the vehicle and, under the described circumstances, including the detection of the odor of marijuana emanating from the vehicle, the officers' brief questioning of the occupants thereof as to their identity leading up to the computer check did not violate the Fourth Amendment. In this general regard, in *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001), we stated that "[f]or example, when stopped for a traffic violation, a motorist expects 'to spend a short period of time answering questions and waiting while the officer checks his license and registration.'" In that same case, we went on to speak as follows:

> Thus, for example, the motorist may be detained for a short period while the officer runs a background check to see if there are any outstanding warrants or criminal history pertaining to the motorist even though the purpose of the stop had nothing to do with such prior criminal history. The justification for detaining a motorist to obtain a criminal history check is, in part, officer safety.

*Id.* at 1221.

Thus, where, as here, the officers observed the driver of a vehicle make an illegal turn, the officers, upon stopping the vehicle, and under the described circumstances, could ask the driver of the vehicle and the passengers therein to identify themselves, by name, and then run their names through the computer without violating the Fourth Amendment. The fact that later the officers, at the scene, took pictures of the three with their shirts off to show their tattoos for the purpose of "possible gang affiliation," which, according to counsel was "outrageous," would not vitiate the validity of their prior

request for identification. In this general regard, we note that counsel on appeal does not challenge the validity of the "initial stop" of the vehicle in which the defendant was a passenger. As we understand it, *United States v. Guevara-Martinez*, 262 F.3d 751 (8th Cir. 2001), relied on by the defendant, involved an "illegal stop." That is not our case.

The United States Sentencing Guidelines makes, as such, no provision for a downward departure based on "cultural assimilation." Nevertheless, other circuits have recognized that a district judge may make a "downward departure" based on "cultural assimilation." *United States v. Rodriguez*, 263 F.3d 429 (5th Cir. 2001), *United States v. Sanchez-Valencia*, 148 F.3d 1273 (11th Cir. 1998), *United States v. Lipman*, 133 F.3d 726 (9th Cir. 1998). Counsel argues in this court that such is permissible under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, and that the district court erred in holding that since the defendant had a criminal record, he "could not" make a downward departure based on "cultural assimilation." From our reading of the transcript of the sentencing hearing, the district court assumed it could make such a departure, but elected not to do so because of the defendant's protracted criminal record. The court, for instance, did not indicate that one prior felony conviction made the defendant ineligible for consideration. Instead, the district court stated that "departure. . . requires some showing that an individual not only has significant family and lifetime ties with the United States, but has comported himself or herself at least generally with the laws of this country." In this same regard, the court also stated that "the problem with the cultural assimilation argument . . . is that he has this

significant criminal history," adding that "it is difficult for me to accept the proposition that the promulgators of the Guidelines would acknowledge that one with this criminal history has been culturally assimilated into this country within the mores, ethics, and laws of the country." We assume, without deciding, that the district court properly considered a cultural assimilation departure but concluded on the record before it that such a departure was not warranted. In *United States v. Browning*, 252 F.3d 1153, 1160-1 (10th Cir. 2001), we spoke as follows:

> [C]ourts of appeal cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant. . . . This exception does not apply when a sentencing court concludes *under the defendant's particular circumstances* that it does not have the authority to depart.[2]

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[2]Our unpublished opinion in *United States v. Ulloa-Porras*, 1 Fed.Appx. 842, 2001 WL 15527 (10th Cir. Jan. 8), *cert. denied*, 532 U.S. 1032 (2001), is virtually on "all fours" with the instant case as concerns counsel's "cultural assimilation" argument.