**UNITED STATES of America,**
**Plaintiff—Appellant,**

v.

**Leticia PANIAGUA–ORTIZ, aka Leticia Hernandez–Ortiz, aka Leticia Ortiz, Defendant—Appellee.**

No. 02–50417.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 2003.

Decided March 16, 2004.

Nancy B. Spiegel, Esq., Ronald L. Cheng, Esq., Elizabeth M. Fishman, USLA–Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellant.

Jonathan D. Libby, Deputy FPD, FPDCA–Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellee.

Before: SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Leticia Paniagua–Ortiz ("Paniagua–Ortiz") was convicted of illegal reentry and sentenced to twenty-four months imprisonment. The United States appeals the district court's downward departure in sentencing Paniagua–Ortiz.

We apply de novo review to the district court's downward departure determinations. *See United States v. Phillips,* 356 F.3d 1086, 1100 (9th Cir.2004) (holding that the de novo review must be applied "in any case decided by this court subsequent to the PROTECT Act's effective date of April 30, 2003.").

■ The district court did not err in granting Paniagua–Ortiz a downward departure for cultural assimilation, because she had resided in the United States for twenty-seven years; she attended elementary, junior high, and high school in California; she reads and writes English; her father and several siblings are legal residents of the United States; she has two children who are legal residents of the United States; and there are no discrete indications that Paniagua–Ortiz's illegal reentry was based on purely economic incentives. *See United States v. Lipman,* 133 F.3d 726, 731 (9th Cir.1998) (holding that "a sentencing court may depart on the basis of cultural assimilation if it finds that the defendant's circumstances remove his case from the heartland of cases governed by the relevant individual guidelines and the Guidelines as a whole.").

■ The district court erred in granting Paniagua–Ortiz, who is a dwarf, a three-level downward departure based upon a combination of factors: (1) the discrimination in Mexico against dwarves (incorporating a "lesser harms" application); (2) Paniagua–Ortiz's separation from her infant child; and (3) jury sympathy. Paniagua–Ortiz did not satisfy her burden of proving the factual basis for the departure based on her stature. *See United States v. Khang,* 36 F.3d 77, 79 (9th Cir.1994). In addition, her separation from her child is

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

not an exceptional case that is outside the heartland of cases. *See Koon v. United States,* 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (holding that a defendant's family ties and responsibilities are not ordinarily relevant in determining "whether a sentence should be outside the applicable guideline range[,]" and thus, these factors "should be relied upon only 'in exceptional cases.'"). Finally, the jury's request for leniency was not a sufficient basis for the district court to depart downward. *See United States v. Rose,* 20 F.3d 367, 374 n. 6 (9th Cir.1994).

**AFFIRMED in part, and REVERSED in part.**

SILVERMAN, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court erred in granting Paniagua–Ortiz a three-level downward departure based upon a combination of factors, and I therefore join in that part of the decision. I disagree, however, with the majority's conclusion that the district court did not err in granting her a downward departure for "cultural assimilation." Accordingly, I respectfully dissent from that part of the decision.

In *United States v. Lipman,* 133 F.3d 726, 730 (9th Cir.1998), we held that a sentencing court has authority under U.S.S.G. § 5K2.0 to consider evidence of "cultural assimilation." However, we limited the application of this factor to circumstances in which the facts were "sufficient to take the case out of the [relevant] Guideline's heartland." *Id.* We also noted that, to the extent cultural assimilation denotes family and community ties, a district court may depart on the basis of cultural assimilation only in "extraordinary circumstances." *Id.*

In my view, this case lacks the sort of "extraordinary circumstances" that justify a downward departure for cultural assimi-

lation. In granting Paniagua–Ortiz a downward departure on this basis, the district court relied on her length of residence in the United States, her schooling here, her literacy in English, and the fact that most of her family lives here. None of these facts, however, shows the type of extraordinary "assimilation" into American culture contemplated by *Lipman,* nor do they take this case out of the heartland of illegal reentry cases.

As I see it, Paniagua–Ortiz has not assimilated herself to this culture in any manner other than to continue pursuing her criminal lifestyle. In 1986, she was convicted of burglary and forgery. In 1987, she was convicted of petty theft and being under the influence of a controlled substance. In 1990, she was convicted of forgery and attempted murder. The attempted murder charge stemmed from her vicious assault on an elderly man, whom she repeatedly stabbed in the back with a knife, struck in the head with a fire extinguisher and a frying pan, bit on the wrists, and tried to burn by setting fire to his home while he was locked in the bedroom. Paniagua–Ortiz was deported in 1995, convicted of illegal re-entry in 1996, deported in 1998 and again in 2000, and convicted of illegal re-entry in 2002. Reviewing this determination de novo, I would reverse district court's three-level downward departure on the basis of "cultural assimilation."