United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-20867

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee-Cross-Appellant,**

**versus**

**JOSE ADRIAN CASTILLO,**

**Defendant-Appellant-Cross-Appellee.**

**Appeals from the United States District Court
for the Southern District of Texas**

Before BARKSDALE and PICKERING, Circuit Judges, and LYNN[*], District
Judge.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The non-foreclosed issue at hand is presented by the
Government's cross-appeal: whether the district court erred when,
in sentencing Jose Adrian Castillo, it departed downward on the
basis of Castillo's cultural assimilation. Because the
Government's appellate issues were *not* preserved in district court,
we apply the plain error standard of review, rather than the
standard set by the Prosecutorial Remedies and Other Tools to End
the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.
L. No. 108-21, § 401(d)(2), 117 Stat. 650, 670 (2003) (in some

---

[*] District Judge of the Northern District of Texas, sitting by
designation.

circumstances, *de novo* review of district court's application of Sentencing Guidelines).  **AFFIRMED.**

I.

In March 2003, Castillo was indicted for being unlawfully present in the United States after being removed for committing an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He moved to have the indictment dismissed but conceded relief was foreclosed by **United States v. Lopez-Ortiz**, 313 F.3d 225 (5th Cir. 2002) (immigration judge's failure, at prior proceeding, to advise alien of eligibility for relief did not render proceeding fundamentally unfair; therefore, collateral attack on underlying deportation *not* available), *cert. denied*, 537 U.S. 1135 (2003).  In the alternative, Castillo requested a bench trial on stipulated facts.  In April 2003, the district court denied the motion to dismiss; conducted the bench trial; and found him guilty.

For sentencing, Castillo filed a statement of no objection to the presentence investigation report (PSR), together with a downward departure request premised on cultural assimilation.  That request cited **United States v. Rodriguez-Montelongo**, 263 F.3d 429, 433 (5th Cir. 2001) ("cultural assimilation is a permissible basis for downward departure") and offered the following facts to justify the departure:  Castillo was brought to the United States at age three by his parents; he grew up, and attended school, in Houston, Texas; he lived continuously in the United States for 18 years

2

until he was removed to Mexico; his parents, siblings, and children lived in the United States; he had no significant ties to Mexico; and he spoke fluent English. Some of these allegations were supported by citation to the PSR.

Subsequently, the Government filed a statement that it, too, had no objection to the PSR. The Government's statement, however, did not mention the downward departure request; nor, prior to sentencing, did the Government file a response to that request.

At sentencing in August 2003, the district court found that Castillo had an offense level of 21 and a criminal history category of VI, yielding a Guidelines sentencing range of 77-96 months' imprisonment. The district court then considered the requested downward departure. Other than adopting pertinent parts of the PSR, Castillo offered no evidence, but argued on behalf of the departure. (In addition, Castillo had earlier addressed the court about his disagreement with portions of the PSR concerning prior convictions, allowing the court to judge his claimed fluency in English.) The Government responded: Castillo should not be permitted to use cultural assimilation to avoid the effect of *Lopez-Ortiz*; he had an extensive criminal history; and that history distinguished his case from that in *Rodriguez-Montelongo*.

The district court granted the downward departure and reduced Castillo's offense level to 18, while keeping the criminal history

3

category at VI. The new sentencing range was 57-71 months. Castillo was sentenced, *inter alia*, to 57 months' imprisonment.

## II.

Acknowledging, as he did in district court, that the issue is foreclosed by **Lopez-Ortiz**, but in order to preserve it for possible Supreme Court review, Castillo appeals the denial of his motion to dismiss the indictment. The motion was properly denied.

In challenging the downward departure, the Government contends: (1) "cultural assimilation" is *not* a sentencing factor that advances the objectives of 18 U.S.C. § 3553(a)(2) (district court to consider the need for sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect public from further crimes by defendant, to provide defendant with needed training, medical care, and correctional treatment); and (2) the facts at hand do *not* support a departure on that basis. (In its reply brief, the Government contends, for the first time, that cultural assimilation departures are *not* authorized by 18 U.S.C. § 3553(b) (when district court may depart from Guidelines). Generally, we do *not* address issues raised for the first time in a reply brief. We decline to do so here but do observe that the Government's position appears foreclosed by **Rodriguez-Montelongo**.)

4

A.

The PROTECT Act did *not* alter our review for findings of fact; 18 U.S.C. § 3742(e) provides we are to "accept the findings of fact of the district court unless they are clearly erroneous". *E.g.*, **United States v. Mitchell**, 366 F.3d 376, 378 (5th Cir. 2004), *petition for cert. filed*, 28 June 2004.

The Act changed our standard of review, however, for sentencing departures. **United States v. Painter**, 375 F.3d 336, 338 (5th Cir. 2004). Prior to the Act, downward departures were reviewed for abuse of discretion. *E.g.*, **United States v. Grosenheider**, 200 F.3d 321, 330 (5th Cir. 2000). The Act's amendments to the above-quoted § 3742(e) (standard of review for findings of fact) included the addition of the following sentence: "With respect to determinations under subsection (3)(A) or (3)(B) [18 U.S.C. § 3742(e)(3)(A) & (B), quoted in part *infra*], the court of appeals *shall review de novo* the district court's application of the guidelines to the facts". 18 U.S.C. § 3742(e) (emphasis added).

Section 3742(e), to which the PROTECT Act added the just-quoted sentence, permits appellate review of sentences. In reviewing departures, we may determine, *inter alia*, whether the sentence is outside the applicable guideline range and

> the sentence departs from the applicable guideline range based on a factor that —

5

                    (i)  does not advance the objectives
                    set forth in [the above-referenced]
                    section 3553(a)(2); or

                    (ii) is not authorized under section
                    3553(b); or

                    (iii)is not justified by the facts
                    of the case....

18 U.S.C. § 3742(e)(3)(B).  These appellate considerations concern

the "determinations under subsection ... 3(B)", for which the

PROTECT Act mandates *de novo* review of the district court's

application of the Guidelines to the facts.

    We have explained the post-PROTECT Act standard of review for

departures:

            First, we must review *de novo* the sentencing
            court's decision to depart (under subsection
            (3)(B)), determining whether the departure is
            based on appropriate factors and taking into
            account the statutory provisions listed in
            (3)(B)(i) and (ii), the facts of the case
            under review, and the sentencing court's
            application of the guidelines to those facts.
            Second, if we find the decision to depart to
            be appropriate, we must review the *degree* of
            that departure for abuse of discretion, based
            on the sentencing court's written statement of
            reasons for the departure provided pursuant to
            § 3553(c).

***United States v. Bell***, 371 F.3d 239, 243 (5th Cir. 2004) (footnote

omitted).  The Government contends we should review its appellate

issues according to ***Bell*** — *de novo*; Castillo, that the issues were

*not* preserved, and, therefore, review should only be for plain

error.  At oral argument, the Government conceded that, if its

appellate issues were *not* preserved in district court, the PROTECT

6

Act *de novo* standard would *not* apply. *See **United States v. Bostic***, 371 F.3d 865, 873 n.7 (6th Cir. 2004) (in *dicta*, expressing doubt that PROTECT Act requires *de novo* review of unpreserved error raised by Government on appeal); *see also **United States v. Saro***, 24 F.3d 283, 286 (D.C. Cir. 1994) (regarding prior legislative amendment for sentencing, "the plain-error doctrine was well entrenched as a background legal principle when Congress acted, and we think it fanciful to suppose that Congress intended [the amendment] to override that doctrine").

Rule 51 of the Federal Rules of Criminal Procedure requires a party opposing district court action to preserve a claim of error by informing the court of "the party's objection to the court's action *and the grounds for that objection*". FED. R. CRIM. P. 51(b) (emphasis added); *see **United States v. Vontsteen***, 950 F.2d 1086, 1090-91 (5th Cir.) (applying Rule 51 in sentencing context), *cert. denied*, 505 U.S. 1223 (1992). The Government informed the district court of its objection to the downward departure; however, the issues it raises now were *not* presented to the district court as "grounds for that objection". Instead, as stated above, the Government: reminded the district court of Castillo's criminal history; urged that departure not be used to avoid the holding of ***Lopez-Ortiz***; and contended that Castillo's criminal history distinguished his case from ***Rodriguez-Montelongo***, in which our court approved cultural assimilation departures.

7

The Government made *no* contention that the departure would *not* advance the objectives of 18 U.S.C. § 3553(a)(2), as it now contends. (The Government maintains that it "implicitly" invoked those objectives; the standard required by Rule 51, however, is one of "informing the court". The district court was *not* so informed.)

And, although the Government informed the district court that it was opposing the departure based on the facts of Castillo's case, at no point did the Government contend that such facts could *not* support the departure. (Accordingly, as discussed *infra*, we do not reach the legal issue relied on by the dissent: preclusion *vel non* of the downward departure because of Castillo's criminal history.) On appeal, the Government analyzes the sufficiency of the facts in terms of a four-part test from **United States v. Martinez-Alvarez**, 256 F. Supp. 2d 917 (E.D. Wisc. 2003). That case, and its test, were not cited to the district court. Also on appeal, the Government makes factual allegations not alleged, much less proved, at sentencing (*e.g.*, Castillo's return was, by his own admission, primarily on economic grounds), and points to the absence of fact findings, even though it did *not* insist on such findings at sentencing (*e.g.*, "the record is bereft of any evidence that Castillo has incorporated the habits and customs of a citizen of the United States").

It goes without saying that the Government was *not* surprised by the district court's action at sentencing; nearly two months

8

before sentencing, it had received Castillo's departure request, was given an opportunity to oppose it at sentencing, and did so. Moreover, after the departure was granted, the Government was asked if it had anything to add; it replied that it did not. Accordingly, the two issues raised by the Government on appeal (advancing objectives of 18 U.S.C. § 3553(a)(2) and factual basis) were forfeited in district court.

Therefore, at issue is the standard of review for errors, raised for the first time in an appeal, contesting a downward departure. Castillo urges application of the well-known four-part plain error test from **United States v. Olano**, 507 U.S. 725 (1993); *see* FED. R. CRIM. P. 52(b) (plain error). At oral argument, the Government agreed that the PROTECT Act did *not* do away with plain error review. For reversible plain error, there must be: (1) error; (2) that is plain (clear or obvious); and (3) affects substantial rights. Even if all three conditions are met, however, we retain discretion to correct the error and ordinarily will *not* do so unless it affects the fairness, integrity, or public reputation of judicial proceedings. *E.g., **United States v. Gore**,* 298 F.3d 322, 324 (5th Cir. 2002).

First, insofar as the Government makes new factual allegations and contentions, it is unlikely those could ever be the basis for reversing forfeited error. *Compare **United States v. Fierro**,* 38 F.3d 761, 773 n.4 & 774 (5th Cir. 1994) (post-**Olano**; "questions of

9

fact *capable of resolution ... at sentencing* can never constitute plain error"; emphasis added) *with **United States v. Rodriguez***, 15 F.3d 408, 416 n.10 (5th Cir. 1994) (*possibility* of reviewing fact issues for plain error; ***Rodriguez***, which also applied ***Olano***, was rendered, however, prior to our en banc decision in ***United States v. Calverley***, 37 F.3d 160 (5th Cir. 1994), which also applied ***Olano***).

Second, as for the issue concerning § 3553(a)(2): although we apply plain error review to a forfeited sentencing error raised by a defendant, *e.g., **United States v. Gracia-Cantu***, 302 F.3d 308, 310 (5th Cir. 2002), our precedent does not describe how this review would apply to those raised by the Government. Although other circuits have held the Government can meet that standard for sentencing by showing that the error affected the outcome, *e.g.,* ***United States v. Barajas-Nunez***, 91 F.3d 826, 833 (6th Cir. 1996), we have not addressed it in the sentencing context. *But see **United States v. Avants***, 278 F.3d 510, 521-22 (5th Cir.) (applying plain error review to issue raised for first time on appeal by Government; holding erroneous exclusion of evidence affected substantial rights because it affected outcome; also held test's fourth prong satisfied, concerning court's discretion), *cert. denied*, 536 U.S. 968 (2002).

Although we do not have precedent on point, one of our pre-***Olano*** cases reviewed a forfeited sentencing error raised by the

Government.  In **United States v. Garcia-Pillado**, 898 F.2d 36 (5th Cir. 1990), the Government appealed a sentence that was below the statutory minimum.  Our court, reviewing for "manifest injustice" (pre-**Olano** standard), affirmed.  **Id**. at 39.  But **Garcia-Pillado** is not applicable.  Post-**Olano**, our 1994 en banc decision in **Calverley**, 37 F.3d at 163-64 & n.20, disapproved pre-**Olano** cases, including **Garcia-Pillado**.  Based on **Calverley**, we will apply the four-part plain error test to the Government's two issues.

B.

1.

Section 3553(a)(2) concerns the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes by defendant, and to provide the defendant with needed training, medical care, and other correctional treatment. Regarding the Government's contention that departing downward failed to advance these objectives, **Garcia-Pillado** (which standard we do *not* apply) found no manifest injustice when a defendant was sentenced to a term of imprisonment ten percent less than a statutory minimum.  Here, 8 U.S.C. § 1326 does not impose a statutory minimum term for the crime of which Castillo was convicted. Because of the departure, he faced a range of 57-71 months instead of 77-96 months; he received a sentence of 57 months.  These ranges can be juxtaposed in various ways.  He

11

received 57 months when he could have received 96 months, nearly twice as long a period of imprisonment. On the other hand, with the departure he could have received 71 months, six months less than he could have received without the departure.

Even after Castillo responded that the errors raised by the Government were forfeited, the Government's reply brief did not claim that, even if the error had been forfeited, it was still reversible. Given this lack of briefing (particularly on how this court ought to measure the extent of the departure), the absence of a statutory minimum, and even assuming clear or obvious error that affected substantial rights, we decline to correct such assumed plain error, pursuant to the discretionary fourth prong for plain error review (discretion to correct error when it affects fairness, integrity, or public reputation of judicial proceedings).

2.

Regarding the Government's challenge to the factual basis for the departure, Castillo presented factual allegations, some of them contained in the PSR, that would support a finding of cultural assimilation that mitigated his culpability for his unlawful re-entry. He was brought to the United States at age three by his parents and continuously lived here, where he was educated and worked, becoming fluent in English. (As noted, the district court had the opportunity to judge that claimed fluency when Castillo addressed the court before it considered the departure request.) Juxtaposed with his connections to the United States, he has

12

virtually no ties to Mexico; his family does not reside there; and he has spent virtually no time there.  The Government did *not* challenge the veracity of those facts, nor did it present evidence that would contradict their impact.  There was evidence to support the departure.

We do not address the Government's factual contentions made here for the first time.  The Government does *not* show the district court committed clear or obvious error; hence, there was no reversible plain error.

### III.

For the foregoing reasons, the judgment is

***AFFIRMED***.

CHARLES W. PICKERING, SR., dissenting.

I disagree with the conclusion that Castillo was entitled to a downward departure based on cultural assimilation. For that reason I respectfully dissent. Although the government failed to preserve for appeal some of its arguments, the government did successfully preserve its objection that the downward departure should not be granted because of Castillo's extensive criminal history and his resumption of criminal activity upon returning to the United States. Specifically, at the sentencing hearing, counsel for the government objected to the downward departure and stated:

> Yes, it was his life in this country [that brought him back after being deported]. And, look at what he did with it. He's been a criminal. He is a common criminal. He has the most severe level of criminal history that can be given in the Guidelines. . . . This man is a serious criminal. He is young and we can anticipate when he comes back to this country, as he will, he may not be caught but he will come back, he will commit more crimes. . . . Here this man has a criminal history of six and it puts him in an entirely different category than someone with a lower criminal history level. And, for those reasons, the Government opposes any notion of a downward departure.

Although it is not the primary focus of the government's argument on appeal, the government continues to assert that Castillo's extensive criminal history is one of the reasons he should not receive a downward departure.

I am of the opinion that the government adequately raised the issue that a cultural assimilation downward departure should not be granted to Castillo based upon his extensive criminal history and his resumption of criminal activity upon returning to the United States. Accordingly, under the PROTECT Act (Pub. L. No. 108-21 § 401(d)(2), 117 Stat. 650, 670 (2003)), we are to review downward departures *de novo* as to issues that are appropriately raised in the court below. I

14

conclude that the issue of cultural assimilation, as it relates to Castillo's criminal history, is appropriate for *de novo* review by this panel.

"[C]ultural assimilation is a fact-specific ground for departure that may speak to an individual defendant's offense, *his conduct and his character*". *United States v. Lipman*, 133 F.3d 726, 731 (9th Cir. 1997) (emphasis added). One of the factors to consider is whether the defendant committed further crimes upon re-entry. *See Id.* at 728-29; *United States v. Martinez-Alvarez*, 256 F.Supp.2d 917, 920 (E.D. Wis. 2003). Although Fifth Circuit case law clearly establishes that cultural assimilation is a basis for downward departure, the contours for the cultural assimilation downward departure in the Fifth Circuit are not at all defined. *See United States v. Rodriguez-Montelongo*, 263 F.3d 429, 433-34 (5th Cir. 2001). The concept of cultural assimilation denotes a certain conformity to socially acceptable standards of conduct. *Webster's Dictionary* defines "culture" as "the totality of . . . behavior . . . and thought typical of a population or community at a given time." *Webster's New College Dictionary II* 274 (2001). It defines "assimilation" as "the process whereby a minority group gradually adopts the cultural characteristics of the majority." *Id.* at 68. Persistent criminal activity is not a socially acceptable standard of conduct.

In my view, an alien who repeatedly breaks the law and consistently commits crimes has not been culturally assimilated and should not be given a downward departure based on cultural assimilation, even though he might otherwise meet the criteria for cultural assimilation. I therefore respectfully dissent.