PICKERING, Circuit Judge,
dissenting:
I disagree with the conclusion that Castillo was entitled to a downward departure based on cultural assimilation. For that reason I respectfully dissent. Although the government failed to preserve for appeal some of its arguments, the government did successfully preserve its objection that the downward departure should not be granted because of Castillo’s extensive criminal history and his resumption of criminal activity upon returning to the United States. Specifically, at the sentencing hearing, counsel for the government objected to the downward departure and stated:
Yes, it was his life in this country [that brought him back after being deported]. And, look at what he did with it. He’s been a criminal. He is a common criminal. He has the most severe level of criminal history that can be given in the Guidelines.... This man is a serious criminal. He is young and we can anticipate when he comes back to this country, as he will, he may not be caught but he will come back, he will commit more crimes.... Here this man has a criminal history of six and it puts him in an entirely different category than someone with a lower criminal history level. And, for those reasons, the Government opposes any notion of a downward departure.
Although it is not the primary focus of the government’s argument on appeal, the government continues to assert that Castillo’s extensive criminal history is one of the reasons he should not receive a downward departure.
I am of the opinion that the government adequately raised the issue that a cultural assimilation downward departure should not be granted to Castillo based upon his extensive criminal history and his resumption of criminal activity upon returning to the United States. Accordingly, under the PROTECT Act (Pub.L. No. 108-21 § 401(d)(2), 117 Stat. 650, 670 (2003)), we are to review downward departures de novo as to issues that are appropriately raised in the court below. I conclude that the issue of cultural assimilation, as it re *639 lates to Castillo’s criminal history, is appropriate for de novo review by this panel.
“[C]ultural assimilation is a fact-specific ground for departure that may speak to an individual defendant’s offense, his conduct and his character”. United States v. Lipman, 133 F.3d 726, 731 (9th Cir.1997) (emphasis added). One of the factors to consider is whether the defendant committed further crimes upon re-entry. See Id. at 728-29; United States v. Martinez-Alvarez, 256 F.Supp.2d 917, 920 (E.D.Wis. 2003). Although Fifth Circuit case law clearly establishes that cultural assimilation is a basis for downward departure, the contours for the cultural assimilation downward departure in the Fifth Circuit are not at all defined. See United States v. Rodriguez-Montelongo, 263 F.3d 429, 433-34 (5th Cir.2001). The concept of cultural assimilation denotes a certain conformity to socially acceptable standards of conduct. Webster’s Dictionary defines “culture” as “the totality of ... behavior ... and thought typical of a population or community at a given time.” Webster’s New College Dictionary II 274 (2001). It defines “assimilation” as “the process whereby a minority group gradually adopts the cultural characteristics of the majority.” Id. at 68. Persistent criminal activity is not a socially acceptable standard of conduct.
In my view, an alien who repeatedly breaks the law and consistently commits crimes has not been culturally assimilated and should not be given a downward departure based on cultural assimilation, even though he might otherwise meet the criteria for cultural assimilation. I therefore respectfully dissent.